CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 19 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| SANDRA K. GALLIMORE, | ) | CASE NO. 5:11CV00102 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's September 2, 2009 application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this action from the docket of the court.

In a decision issued on May 27, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff met the insured status requirements of the Act on September 30, 2009[1], and that there was no evidence of substantial gainful activity at any time relevant to the decision. (R. 12.)

---

[1] In order to qualify for disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, September 30, 2009. *See* 20 C.F.R. § 404.131(a).

The Law Judge determined that plaintiff's carpal tunnel syndrome and arthritis involving the thumb joints were severe impairments, but that through her date last insured, she did not have an impairment or combination of impairments which met or medically equaled a listed impairment. (R. 12-13.) The Law Judge was of the belief that through the date plaintiff was last insured, she retained the residual functional capacity ("RFC") to lift and carry objects weighing up to ten pounds on a frequent basis, and up to twenty pounds on an occasional basis. (*Id.*) He also believed she could sit, stand, or walk for about six hours over the course of a typical eight-hour workday. (*Id.*) The Law Judge found that while she could use her hands on a frequent basis for fine manipulation, plaintiff was not able to work at jobs which require constant use of the hands for fine manipulation. (*Id.*) The Law Judge concluded that this RFC did not preclude plaintiff from returning to her past relevant work as a customer service representative, fitness instructor, real estate salesperson, and video monitor. (R. 14.) The Law Judge further concluded that, even if she could not return to her past relevant work, there was a significant number of other jobs available in the national economy that she could perform. (*Id.*) Thus, the Law Judge ultimately found that plaintiff was not disabled under the Act at any time from her alleged disability onset date through her date last insured. (*Id.*)

Plaintiff appealed the Law Judge's May 27, 2011 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in

2

the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

Plaintiff advanced various arguments during oral argument before the undersigned, but the issue ultimately before the court is whether the Law Judge's decision that plaintiff could return to her past relevant work is supported by substantial evidence. The undersigned finds that it is.

As noted by the Commissioner during oral argument, there is a very short insured period at issue in this case. Plaintiff alleged a disability onset date of January 1, 2009, and her insured status ran out on September 30, 2009. (R. 10, 12.) Thus, the period at issue is January 1, 2009 through September 30, 2009. It is important to note here that there is very little medical evidence covering the relevant time period.

The record reveals that on January 14, 2009, plaintiff was seen by treating source Samuel A. Hostetter, M.D. (R. 339-340.) The physician found that she was "[a] generally healthy 52 year old woman in no acute distress with some minor issues which we discuss and some health care maintenance issues[.]" (R. 340.)

On August 14, 2009, plaintiff was seen again by Dr. Hostetter. (R. 337.) On that date, plaintiff reported that she was experiencing some pain in her hands. (*Id.*) She stated that the pain was not severe, but that it did prevent her from doing things she had been used to doing. (*Id.*)

On August 27, 2009, plaintiff underwent electrodiagnostic testing performed by Peter A. Puzio, D.O. (R. 367-368.) Dr. Puzio found that plaintiff had bilateral mild median neuropathies across the wrists affecting the sensory fibers of the median nerves. (R. 368.) He also found that

3

she had a good prognosis for future recovery due to the lack of axonal loss distal to the tunnels. (*Id.*) Dr. Puzio also determined that plaintiff had focal arthritis in the proximal thumb joints. (*Id.*)

On September 29, 2009, plaintiff was seen by another treating source Kenneth A. Boatwright, M.D. (R. 369.) Dr. Boatwright noted that plaintiff was tearful due to pain and numbness, and his examination revealed a positive Tinel's sign, positive Phalen's and reversed Phalen's test, and a positive grind test in both thumbs. (*Id.*) The physician noted that nerve conduction tests had been done which confirmed she was suffering with carpal tunnel syndrome bilaterally. (*Id.*) The physician noted that he would be scheduling plaintiff for bilateral carpal tunnel releases in the near future. (*Id.*)

On October 20, 2009, after her date last insured, plaintiff underwent left carpal tunnel release. (R. 329.) Dr. Boatwright also performed a right carpal tunnel release on November 3, 2009. (R. 361.) On November 18, 2009, Dr. Boatwright evaluated plaintiff following both carpal tunnel release surgeries. (R. 382.) He found that she was doing "quite well," so much so that she no longer was experiencing the numbness in both hands and pain in her wrists. (*Id.*)

The record reveals that Ann K. Henry, M.D. saw plaintiff on one occasion, November 18, 2010. (R. 444.) On that date, Dr. Henry noted that plaintiff presented with a long history of diffuse joint problems. (*Id.*) The physician concluded that plaintiff probably did suffer some mild osteoarthritis in her hands. (*Id.*) On December 30, 2010, Dr. Henry completed an assessment in which she opined that plaintiff was not capable of reliably completing a normal workday. (R, 447.) The physician noted that plaintiff had symptoms of pain, but she found that she had *no* limitations on physical exam. (*Id.*) Dr. Henry also noted that she had only seen plaintiff on one occasion, and that she was relying on plaintiff's own assessment of her ability to

4

function. (*Id.*) The physician suggested that she did not believe that plaintiff was a malingerer. (*Id.*)

The Law Judge addressed Dr. Henry's December 30, 2010 assessment and decided not to credit it. (R. 14.) Specifically, the Law Judge noted that Dr. Henry's opinion was based in large part, if not completely, on plaintiff's subjective complaints at an evaluation which was performed more than a year after her insured status had expired. (*Id.*) The Law Judge also noted that Dr. Henry's November 18, 2010 evaluation was negative for inflammatory arthopathy and essentially was within normal limits. (*Id.*) The Law Judge's decision not to credit Dr. Henry's assessment is supported by substantial evidence.

During oral argument, the Commissioner argued that plaintiff had not shown that she suffered functional limitations beyond those which were included in her RFC. The undersigned agrees. As noted above, the Law Judge found that through her date last insured, plaintiff retained the residual functional capacity ("RFC") to lift and carry objects weighing up to ten pounds on a frequent basis, and up to twenty pounds on an occasional basis. (R. 13.) He also found she could sit, stand, or walk for about six hours over the course of a typical eight-hour workday. (*Id.*) The Law Judge determined that, while plaintiff could use her hands on a frequent basis for fine manipulation, she was not able to work at jobs which require constant use of the hands for fine manipulation. (*Id.*) The undersigned concludes that this RFC adequately accounted for any limitations plaintiff was able to show she suffered.

The Law Judge's finding that plaintiff could return to her past relevant work also is supported by the opinions offered by two State Agency record reviewing physicians. R.S. Kadian, M.D., a physician who evaluated plaintiff's medical records on September 28, 2010, opined that plaintiff could lift and/or carry (including upward pulling) twenty pounds occasionally and lift and/or carry (including upward pulling) ten pounds frequently. (R. 187.)

5

The physician concluded that she could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (*Id.*) Dr. Kadian found that plaintiff's ability to push and/or pull (including operating of hand and/or foot controls) was unlimited, other than any limitations on her ability to lift and/or carry. (*Id.*) He further found that she had no postural, visual, communicative, or environmental limitations. (R. 187-188.) Dr. Kadian concluded that her ability to reach in any direction (including overhead), her ability to handle (gross manipulation), and her ability to feel (skin receptors) were all unlimited. (R. 187.) The physician did, however, find that plaintiff suffered manipulative limitations. (*Id.*) Specifically, Dr. Kadian opined that her ability to finger (fine manipulation) was limited in both hands, such that she would be capable of frequent, but not constant bilateral fine manipulative movements due to her carpal tunnel syndrome. (R. 188.) Finally, the physician concluded that plaintiff had the functional capacity to perform her past relevant work as a customer service representative as it is normally performed in the national economy. (R. 189.)

On March 5, 2010, State Agency record reviewing physician Jacqueline McMorris, M.D. reviewed plaintiff's medical records and noted that plaintiff's primary diagnosis was bilateral carpal tunnel syndrome. (R. 397-404.) The physician opined that plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (R. 398.) Dr. McMorris further opined that plaintiff's ability to push and/or pull (including the operation of hand and/or foot controls) was unlimited, other than any limits on her ability to lift and/or carry. (*Id.*) The physician found that she had no postural, visual, communicative, or environmental limitations. (R. 399-401.) Dr. McMorris found that plaintiff's carpal tunnel syndrome would cause her to suffer limitations on

fingering (fine manipulation). (R. 400.) Specifically, the physician found that plaintiff should avoid repetitive activities with both wrists. (*Id.*)

Having found that the Law Judge's RFC finding adequately accounted for any limitations plaintiff experienced during her insured period, and that the ultimate finding that she could perform her past relevant work is supported by substantial evidence, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

_6/19/12_
Date